LEON BRUCK, Plaintiff, v. JULIO LARAT and "JOHN" INDOLICO, Defendants.

Municipal Court of New York, Borough of Manhattan, Seventh District, Part II, June 20, 1927.

Summary proceeding to dispossess — non-payment of rent — three leases were executed within ten days, each subsequent lease being for less rental than prior one — first two leases were abandoned — last lease executed is binding on parties.

In this summary proceeding for non-payment of rent, it appears that three leases were executed within ten days, but that each subsequent lease was for a less rental than the prior one. Since the evidence warrants a finding that the first two leases have been abandoned, the last lease which the parties executed necessarily must be binding upon them.

SUMMARY proceeding for non-payment of rent.

*Francis P. Burns*, for the plaintiff.

*Morris Wagman*, for the defendants.

PANKEN, J. In this summary proceeding for non-payment of rent a situation is presented which 's rather unique. I have not been able to find any parallel of that situation described anywhere in the books.

There is unanimity between the litigants as to what the facts are. No issue is raised. Yet a very complicated situation presents itself.

The facts are as follows: On the 20th of January, 1927, the landlord and tenant entered into a lease covering the premises in question, and executed the same on that day, reserving a rental of $3,600 a year for the term of. two years beginning February 1, 1927. On the same day the same landlord and tenant executed a lease covering the same premises and for the same term, reserving a rental of $3,000 a year. To add to the confusion, another lease is introduced in evidence, admittedly executed by the same parties, covering the same premises, for 'the same term and bearing the same date, reserving a rental of $1,500 per annum.

The proceeding before me is evidently brought on the second lease, for the rent demanded in the petition limits itself to $250 a month, for the months of April and May. The landlord, however, testified, and the tenant substantiated him, that the only rent received by the landlord during the period was the rent paid for the month of February, and that was at the rate of $3,600 a year, the tenant having paid $300. Evidently that payment was made under the first lease. The rent for March was not paid to the landlord, but to a receiver appointed by a justice of the Supreme Court of this State in an action to foreclose a mortgage which was a lien on the property.

All of the leases in evidence were prepared by the attorney for the landlord. The record is silent as to whether or no the tenant was represented by counsel in the negotiations leading to or at the execution of the leases.

The landlord asserts that service of process in the action in the Supreme Court to foreclose the mortgage on his property has never been effected; and also that no copy of the order appointing the receiver has ever been served upon him; and because of that he urges upon the court that in so far as he was concerned there was no action pending, and that the receiver appointed by the court could not affect his rights.

In so far as this court is concerned, it cannot interfere in any action pending in the Supreme Court, nor can it disregard, disturb or modify any order entered in the Supreme Court. If a process

was not served upon the landlord herein, or a copy of the order appointing the receiver has not been served, the landlord's remedy is to use the forum of the Supreme Court to obtain the relief he may be entitled to.

There is some proof in the case that the receiver in possession of the premises under an order of the Supreme Court has been discharged by an order vacating the order appointing him as such.

The tenant does not question the title of the landlord, so that both parties are properly before me.

In the course of the trial I doubted whether the landlord herein had the capacity to enter into any contract with the tenant, whether the first, second or third lease in evidence. I have come to the conclusion that whether he had capacity to do so or no in relation to the premises herein, he undoubtedly had a right to do so, and could obligate himself to the tenant. He has now been revested with possession of the premises, and one of the leases in evidence is binding upon him as well as upon the tenant. The question is, which one?

It is evident that the landlord has abandoned the first lease. The tenant is not anxious to revive it, for that is the lease reserving the highest rental.

To add to the complications, the receiver, who was in possession of the premises during the month of March, or in any event during the period when the March rent became due and payable, accepted from the tenant herein the sum of $200 as the rent for said month of March. That, in view that I hold that the landlord could obligate himself to the tenant and the tenant could obligate himself to the landlord under one of the leases executed, does not affect the lease, if any, under which the tenant is in possession.

No light has been shed upon the problem as to the reason why this lease reserving a rental of $1,500 has been entered into, excepting from the testimony given by the landlord. This $1,500 lease was executed some time after the tenant took possession, some time in the month of February, probably after the receiver took possession. The action brought in the Supreme Court was pending at the time the first two leases had been executed. Whether the landlord knew of the pending action or not, the record does not disclose. He did know of the action when the third lease was executed.

In response to a question to explain why the $125 lease had been executed, the following testimony was given: " After we had the receiver in the house he came to me and asked me would I make one for $125.00. I said ' If I am out of the house, what is the good? ' He said, ' Do me a favor to do that because I can pay them $125.00.' It might have been foolish on my part. I said

' All right, if I am out I do not care what you want me to sign.'
That is the reason I signed one for $125.00."

This testimony was not denied by the tenant; it is before me
uncontroverted. I believe that or something similar happened
between the parties. This third lease was not a legitimate child.
Whether it was the tenant's fertile mind that conceived the fraudu-
lent purpose in back of the third lease, or the landlord was the one
who conceived it, is beside the question. Both were parties to it,
one the beneficiary, the other the intended benefactor, but not at
his expense. It is remarkable how beneficent men sometimes are
when the cost is borne by someone else or is nothing to themselves.
Too often, indeed, man is the recipient of honors which his meanness
does not warrant; we judge him by outward appearances rather
than by an inquiry into the recesses of his inner life; and so a heralded
benefactor may have parted with nothing to receive the plaudits
for a benefaction which he had not actually conferred.

Is not the landlord estopped from asserting his right under
the second lease, in the face of his testimony as to the execution
of the third lease?

On first blush, my reaction was to place the parties to this liti-
gation in *status quo;* but I found difficulty to determine what the
*status quo* is as between them. If it were possible for me to dis-
regard all the leases in evidence, my inclination would be to do so.
The landlord could then enforce a claim to compensation for use
and occupancy. I felt as if the court in this proceeding had been
called upon to wash the dirty hands of the parties to this litigation,
and I have no desire to become the nurse to folks who have no
regard for the cleanliness which decent dealing commands.

The question presents itself as to whether or not there has been
any consideration for the third agreement under which the tenant
claims to be now in possession. Parties entering into an agreement
may in writing modify it, may change the provisions in the agree-
ment. They may abandon the agreement and enter into new
agreements.

The landlord in this proceeding on his own statement believed
himself to be entirely out of the picture, for he said when he was
importuned to enter into the new lease: " If I am out of the house,
what is the good? " and then said: " All right, if I am out I do
not care what you want me to sign." Evidently he had come
to the conclusion that he no longer had any relation to the building
at all. I must conclude, therefore, that in so far as he is concerned
he had abandoned both the first and the second lease, the one
reserving the rental of $3,600, and the rental of $3,000. What his
purpose was in entering into this third lease, if inquired into, does

not add to his verity.    Between themselves they have established a new relationship.    Whether it is a fair one or not, the court will not inquire into.

If it is unfair to the landlord, he should have thought of that when he entered into the third lease.    He should not have dug a pit for someone else.

" He made a pit, and digged it, and is fallen into the ditch which he made.

" His mischief shall return upon his own head, and his violent dealing shall come down upon his own pate."    (Psalm VII, 15, 16.)

If one or the other has fallen into the pit which he dug for someone else, in any event it is of his own making.    This court has no power to reframe any contract.    The parties will stand by their bargain as shown in the lease reserving the rental of $1,500 per annum.